UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN TAYLOR and
LAURA TAYLOR,

     Plaintiffs,                              Case No. 23-cv-11488
                                            Hon. Matthew F. Leitman

v.

UNITED STATES OF AMERICA,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (ECF No. 12)

In this action, Plaintiffs Marvin and Laura Taylor allege that the Government has wrongfully obstructed their efforts to pay back taxes that they admittedly owe. The allegations the Taylors make in their Amended Complaint raise serious questions about whether they have been treated fairly by the Government. (*See* Am. Compl., ECF No. 11.)   However, the claims the Taylors bring against the Government in this action all fail as a matter of law because they are unexhausted or fail to state viable causes of action.  Thus, for the reasons explained below, the Court **GRANTS** the Government's motion to dismiss (*see* Mot., ECF No. 12) and **DISMISSES** the Taylors' Amended Complaint.

# I

## A

The Taylors are residents of Oakland County, Michigan. (*See* Am. Compl. at ¶ 3, ECF No. 11, PageID.133.)  They acknowledge that they incurred a significant tax liability to the Government and that they owed unpaid taxes for several tax years. (*Id.* at ¶ 6, PageID.134.)  By 2017, the total amount of the Taylors' tax liability was over $900,000. (*See id.* at ¶ 35, PageID.145.)

According to the Taylors, they retained counsel and have spent the past several years trying to extinguish their tax liability.  For example, the Taylors say that in July 2021, their counsel "submitted a proposed installment agreement to the [Government] to pay off their tax liabilities in full." (*Id.* at ¶ 7, PageID.134.)  But the Government allegedly failed to even consider that proposal. (*See id.* at ¶ 14, PageID.137.)

Then, in June 2022, the Taylors mortgaged their home and submitted the $575,000 in proceeds from that mortgage to the Government. (*See id.* at ¶ 32, PageID.143.)  However, "the [Government] refused to apply the $575,000 [it] received from [the Taylors'] mortgage to [the Taylors'] tax liabilities." (*Id.* at ¶ 34, PageID.144.)  Instead, the Taylors claim that the Government "applied" the $575,000 to the 2009 tax year – a year that the Taylors had already paid back any back taxes they had owed. (*Id.* at ¶ 35, PageID.145.)  "In other words, the

2

[Government] simply parked the $575,000 payment from the mortgage in 2009, causing an overpayment of $575,000 for 2009, and improperly leaving the amounts for the other years, . . . showing $900,000 owed." (*Id.*)

Meanwhile, the Taylors say that during this time, the Government engaged in a campaign of harassment against them, including but not limited to threatening to levy and actually levying their bank accounts, threatening Laura Taylor with criminal prosecution, and issuing "at least 17" administrative summonses to third parties "which clearly stated or implied that . . . Laura Taylor was under criminal investigation." (*Id.* at ¶¶ 39, 42, PageID.147-148, 149.)

## B

On January 17, 2023, the Taylors, through counsel, filed an administrative claim (the "Administrative Claim") with the Government in which they raised allegations of misconduct by agents of the Internal Revenue Service (the "IRS"). (*See* Admin. Claim, ECF No. 12-2, PageID.564-566.)  The Administrative Claim included a section in which the Taylors listed the "grounds" for their claim. They described the "grounds" as follows:

> Grounds: These damages stem from the harassment and persecution of Marvin and Laura Taylor disguised as legitimate tax collection activity by the IRS. The Taylors have tried to communicate, reason with, and collaborate with the IRS to get the tax liability paid in full. It is the Taylors' belief that the IRS singled them out and terrorized their lives due to what the Service felt were illegitimate religious beliefs. This persecution exacerbated Laura

3

Taylor's battle with a brain tumor, and the financial chaos that ensued hindered their ability to make the best medical decisions possible for Laura Taylor. Additionally, this persecution caused lasting emotional and mental distress to Laura Taylor as she bravely battled a brain tumor. This illness was well known to the Service, and their constant attacks have not only delayed the tax being paid in full but caused irreparable harm to Mrs. Taylor's physical and mental health as well as to the Taylors' dental practice. The main, relevant details are detailed below:

- The Taylor's [sic] owed approximately one million dollars in tax liability. This issue has not been contested, and the Taylor's [sic] have been desperate to work with the IRS to get this liability paid.

- **Violation of IRC 6331(k)**: The Taylors submitted a proposed installment agreement. After a conversation with the agent in charge that revolved around the Taylors' religious beliefs, the taxpayers and their attorney were led to believe this installment agreement was being considered.

- **Violation of IRC 6331(k)**: On June 6, 2022, a new installment agreement was proposed. This agreement was never processed.

- **Violations of IRC 6325(a) and IRC 6301**: The Taylors ultimately got a mortgage on their home which netted $575,000. This money was handed over to the IRS in full. However, the Service refuses to apply those funds to the outstanding balance and refused to release the lien within 30 days.

- Of the $1,000,000 in taxes that are owed there has been a $100,000 levy on the Taylors' bank account, a $93,000 tax refund from the 2021 tax filing that has been seized, and a $575,000 payment from the mortgage of the Taylor home which leaves less than

4

$200,000 in tax liability, once some other refunds and interest on the $575,000 is considered.

- **Violation of IRC 6304(b)**: There is an amended return for the 2015 tax year that would result in a $200,000 adjustment to the 2015 liability. This would make their tax liability zero for the years in issue, 2009, 2010, 2013, 2015 and 2017. The Service refuses to process that 2015 amended return. While the IRS is not obligated to process the amended return under the Internal Revenue Code, along with the IRS's other actions, the fact the IRS considers amended returns for millions of Americans yet is being denied to the Taylors is abusive, harassing, and retaliatory.

- **Violation of IRC 6304(b)**: Despite accounting for the entire $1,000,000 with no negotiating or compromise, the Service refuses to communicate with the Taylors. Again, the tax liability has been fully accounted for, yet the Taylors live in fear that the Service will continue to work to destroy their health, business, and future.

(*Id.*)

After listing the grounds, the Taylors said in the Administrative Claim that the Government's alleged misconduct (1) caused Laura Taylor to suffer "crippling" "emotional and mental distress" that negatively affected her treatment for a brain tumor and (2) "irreparably harmed" the "goodwill and revenue [of] the Taylors' [d]ental practice." (*Id.*, PageID.565-566.)  The Taylors asked for $1,000,000 in damages. (*See id.*, PageID.566.)

5

On March 24, 2023, the Government denied relief on the Administrative Claim for two reasons. (*See* 03/24/2023 Letter, ECF No. 11-3.)   First, the Government said that "[a]ll actions taken were within established procedures and guidelines." (*Id.*, PageID.165.)   Second, the Government said that "[t]here was no harassment nor any evidence of causing any emotional or mental distress." (*Id.*)

## C

Following the denial of the Administrative Claim, the Taylors, again through counsel, filed a Complaint in this Court "under [26 U.S.C. § 7433] for damages resulting from the reckless, intentional and/or negligent disregard of the Internal Revenue Code and its regulations by officers, agents and/or employees of the Internal Revenue Service." (Compl. at ¶ 1, ECF No. 1, PageID.1.)   The Government then moved to dismiss. (*See* Mot. to Dismiss, ECF No. 6.)   Instead of granting that motion, the Court granted the Taylors leave to file a First Amended Complaint to clarify their claims. (*See* Order, ECF No. 10.)   In its Order granting leave, the Court explained to the Taylors that "[t]his [was the Taylors'] opportunity to, among other things, plead all facts, currently known to them, that support [their] claims and would address the deficiencies that the [Government] identified in its motion to dismiss." (*Id.*, PageID.132.)   The Court then warned the Taylors that it would "not allow [them] another opportunity to amend to add factual allegations that they could now include in their First Amended Complaint." (*Id.*)

6

The Taylors filed their Amended Complaint on June 3, 2024. (*See* Am. Compl., ECF No. 11.)  The Amended Complaint does not include any numbered Counts, and it is difficult to understand the precise claims that the Taylors are making.  It appears that the Taylors' claims, and the legal bases for the claims, can be found in paragraph 42 of the Amended Complaint.  In full, that paragraph of the Amended Complaint provides as follows:

> The IRS's actions in not processing the request for installment payment agreement, in not communicating with Plaintiffs regarding the installment payment requests, in continuing to levy on Plaintiffs without notice, despite the fact that the IRS was not to levy without notifying Plaintiffs and not levy when there was a[n] installment agreement pending, refusing to apply the $575,000 mortgage proceed amount to any of the tax debts that Plaintiffs owed in violation of the IRS's published administrative rules, refusing to process Plaintiffs' 2015 amended return and refusing to apply any payments to 2015's liability, threatening to levy and seize Plaintiff's property, including the one occupied by the Buddhist temple, threatening criminal prosecution and starting a criminal investigation and issuing a large amount of administrative summonses for the purpose of embarrassing Plaintiffs, and improperly modifying IRS records to cover up the IRS's activities regarding the $575,000 were all intentionally or negligently done in order to harass Plaintiff and oppress and abuse Plaintiff and intending to cause Plaintiff Laura Taylor severe mental distress because of her brain tumors and intending to cause both Plaintiffs severe emotional distress because of their fear they would lose their property and businesses and such actions were done to further wrongful IRS actions and violated provisions of the Internal Revenue Code and the regulations promulgated there under, such as

26 USC 6331(k), 6325(a), 6301, 6304, 6103, and Revenue
Procedure 2002-26, and the Taxpayer's Bill of Rights.

(*Id.* at ¶ 42, PageID.149-150.)

The only relief that the Taylors seek is monetary damages. (*See id.*, PageID.152: "WHEREFORE, Plaintiffs pray that this Honorable Court award Plaintiffs damages in amount in excess of $1,000,000, plus costs and attorney fees so wrongfully incurred.")

The Government moved to dismiss the Amended Complaint on June 24, 2024. (*See* Mot. to Dismiss, ECF No. 12.)  The Government primarily argues that (1) "[t]he Taylors have failed to exhaust their administrative remedies for […] at least seven of the 12 alleged actions and inactions [identified in paragraph 42 of the Amended Complaint]" (*id.*, PageID.542-544), (2) "[t]he Taylors have failed to state claims, on the merits, for the remainder" of the identified acts of misconduct (*id.*, PageID.544-554), and (3) at least five of the claims are barred by sovereign immunity (*see id.*, PageID.554-559).

The Court has carefully reviewed the motion, the Taylors' response (*see* Resp., ECF No. 13), and the Government's reply (*see* Reply, ECF No. 14), and it is now prepared to rule on the motion.

## II

The Government has moved to dismiss the Taylors' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Rule 12(b)(1) governs challenges

based on a lack of subject-matter jurisdiction. *See Loren v. Blue Cross & Blue Shield of Michigan*, 505 F.3d 598, 607 (6th Cir. 2007).  Rule 12(b)(1) motions fall into two general categories: facial attacks and factual attacks. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack "is a challenge to the sufficiency of the pleading itself." *Id.*  The court accepts a complaint's allegations as true and determines whether they establish federal jurisdiction. *See id.*  In contrast, when a motion raises a factual attack, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal citation omitted).

Rule 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)).  A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).  "Mere conclusions," however, "are not

entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.  A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 556.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III

## A

As noted above, the Taylors bring this action under 26 U.S.C. § 7433. (*See* Am. Compl. at ¶ 1, ECF No. 11, PageID.133: "This is an action under [Section 7433] for damages…")  That statute "provides a damages remedy against the United States for certain actions of IRS officers or employees 'in connection with any collection of Federal tax.'" *Agility Network Servs., Inc. v. United States*, 848 F.3d 790, 792 (6th Cir. 2017) (quoting 26 U.S.C. § 7433).  Before pursuing a claim under Section 7433, a taxpayer must first "exhaust[] the administrative remedies available . . . within the Internal Revenue Service." 26 U.S.C. § 7433(d)(1).  To exhaust those remedies, a taxpayer must "file[] an administrative claim" with the "Compliance Technical Support Manager of the area in which the taxpayer currently resides" that, among other things, states "[t]he grounds, in reasonable detail, for the claim." 26 C.F.R. §§ 301.7433-1(a), (e)(2)(ii).  A taxpayer must "strictly comply with exhaustion

10

requirements [in Section 7433] before filing an action in federal court.  Substantial compliance is insufficient." *Hoogerheide v. I.R.S.*, No. 08-cv-765, 2009 WL 4639331, at *4 (W.D. Mich. Dec. 2, 2009) (internal citation omitted) (dismissing claims for failing to exhaust under Section 7433) *aff'd* 637 F.3d 634, 639 (6th Cir. 2011) ("Hoogerheide did not exhaust his administrative remedies . . . . For that reason his claim must be dismissed."). *See also Tharp v. I.R.S.*, 13 F. App'x 326, 328 (6th Cir. 2001) (holding that where plaintiffs did not comply with "the procedures set forth in § 301.7433–1," the plaintiffs had "failed to exhaust their available administrative remedies").

**B**

Given the exhaustion requirement described above, the only claims that the Taylors may pursue in this action are ones for which they have exhausted their administrative remedies – *i.e.*, the claims that they identified "in reasonable detail" in the Administrative Claim.  The Court analyzes below whether the claims identified in the Administrative Claim set forth viable causes of action.  While the Court would ordinarily review the allegations in a Complaint, not allegations in an administrative filing, to determine whether a plaintiff has stated a viable claim, the Court evaluates the claims as described in the Administrative Claim here because the statement of claims in that administrative filing is much clearer than the statement of claims in the Amended Complaint.  Proceeding in this fashion does not

prejudice the Taylors because, in light of the Taylors' obligation to exhaust their administrative remedies, the claims in the Amended Complaint cannot exceed the scope of the claims as stated in the Administrative Claim.  Stated another way, by reviewing the claims in the Administrative Claim, the Court will necessarily be reviewing all of the claims that the Taylors could possibly be asserting in their Amended Complaint.  And reviewing the claims as set forth in the Administrative Claim does not prejudice the Government because, as described below, the Court concludes that those allegations fail to state viable causes of action.

**1**

The Taylors first alleged in the Administrative Claim that the Government violated Section 6331(k) of the Internal Revenue Code, 26 U.S.C. § 6331(k), when the Government "led [the Taylors' counsel] to believe" that an installment payment plan the Taylors had submitted "was being considered" ("Administrative Claim 1"):

> **Violation of IRC 6331(k)**: The Taylors submitted a proposed installment agreement.  After a conversation with the agent in charge that revolved around the Taylors' religious beliefs, the taxpayers and their attorney were led to believe this installment agreement was being considered.

(Admin. Claim, ECF No. 12-2, PageID.565.)

Administrative Claim 1 fails as a matter of law because the alleged misconduct – leading the Taylors to believe that their proposed installment plan was being considered – does not violate Section 6331(k).  That section of the Internal

Revenue Code provides, in relevant part, that the Government shall not levy a person's property while certain offers-in-compromise or installment agreements are pending:

> **(1) Offer-in-compromise pending.** -- No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid tax –
>
>> **(A)** during the period that an offer-in-compromise by such person under section 7122 of such unpaid tax is pending with the Secretary; and
>>
>> **(B)** if such offer is rejected by the Secretary, during the 30 days thereafter (and, if an appeal of such rejection is filed within such 30 days, during the period that such appeal is pending).
>
> For purposes of subparagraph (A), an offer is pending beginning on the date the Secretary accepts such offer for processing.
>
> **(2) Installment agreements.** -- No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid tax --
>
>> **(A)** during the period that an offer by such person for an installment agreement under section 6159 for payment of such unpaid tax is pending with the Secretary;
>>
>> **(B)** if such offer is rejected by the Secretary, during the 30 days thereafter (and, if an appeal of such rejection is filed within such 30 days, during the period that such appeal is pending);
>>
>> **(C)** during the period that such an installment agreement for payment of such unpaid tax is in effect; and

> **(D)** if such agreement is terminated by the Secretary, during the 30 days thereafter (and, if an appeal of such termination is filed within such 30 days, during the period that such appeal is pending).

26 U.S.C. § 6331(k)(1)-(2).

The Taylors have not cited any case in which any court has held that the Government violates Section 6331(k) by leading a taxpayer to believe that it (the Government) is considering the taxpayer's proposed installment plan. And the text of the statute suggests that it does not apply to those circumstances. The text of the statute addresses only the circumstances under which the Government is prohibited from levying a taxpayer's property. Since the Taylors did not allege in Administrative Claim 1 that the Government made a prohibited levy, that claim is not a viable cause of action for a violation of Section 6331(k).

**2**

Second, the Taylors alleged in the Administrative Claim that the Government violated Section 6331(k) when the Government "never processed" "a new installment agreement" that the Taylors proposed in June 2022 ("Administrative Claim 2"). (Admin. Claim, ECF No. 12-2, PageID.565.) But Administrative Claim 2 fails for the same reason that Administrative Claim 1 fails: the Taylors did not allege in Administrative Claim 2 that the Government made a prohibited levy. Nor have the Taylors cited any authority supporting the proposition that the failure to

process a proposed installment agreement violates Section 6331(k).  For these reasons, Administrative Claim 2 fails as a matter of law.

3

Third, the Taylors alleged in the Administrative Claim that the Government violated Sections 6325(a) and 6301 of the Internal Revenue Code, 26 U.S.C. §§ 6325(a), 6301, when it "refuse[d] to apply" the $575,000 that the Taylors submitted to the Government after they mortgaged their home "to the [Taylors'] outstanding balance and refused to release the lien within 30 days" ("Administrative Claim 3"). (*Id.*)  But the Taylors have not plausibly alleged a violation of either Section 6325(a) or Section 6301 as it relates to the treatment of their mortgage proceeds.

a

The Court starts with Section 6325(a).  That section provides that:

> **(a) Release of lien.** -- Subject to such regulations as the Secretary may prescribe, the Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which --
>
> > **(1) Liability satisfied or unenforceable** -- The Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable; or
> >
> > **(2) Bond accepted.** -- There is furnished to the Secretary and accepted by him a bond that is conditioned upon the payment of the amount assessed, together with all interest in respect

15

> thereof, within the time prescribed by law (including any extension of such time), and that is in accordance with such requirements relating to terms, conditions, and form of the bond and sureties thereon, as may be specified by such regulations.

26 U.S.C. § 6325(a)(1)-(2).

Here, the Taylors have not plausibly alleged a violation of Section 6325(a)(1) or (a)(2).  To the extent that the Taylors rely on subsection (a)(1), that subsection requires the release of a lien if "the amount assessed . . . has been fully satisfied," and the Taylors have not alleged that they have satisfied the entire amount of their outstanding assessed tax liability.  Indeed, even if the $575,000 in proceeds from the Taylors' mortgage had been applied to that liability in exactly the way the Taylors had wanted, they still would have owed the Government hundreds of thousands of dollars.  Nor have the Taylors alleged that the amount they owe has become "legally unenforceable."

The Taylors have likewise not plausibly alleged a violation of subsection (a)(2).  That subsection applies when a bond is "accepted," and the Taylors have not alleged that the Government ever accepted a "bond" they provided.  Thus, the Taylors have not plausibly alleged that the Government violated Section 6325(a)(2).

**b**

The Taylors have also failed to state a viable claim under Section 6301.  That section provides only that "[t]he Secretary shall collect the taxes imposed by the

16

internal revenue laws." 26 U.S.C. § 6301.   The Taylors have not sufficiently explained how the Government violated a general statute that broadly authorizes it to collect taxes.  The Taylors therefore cannot proceed with this claim under Section 6301.

c

For all of these reasons, Administrative Claim 3 fails as a matter of law.

4

Fourth, the Taylors' alleged in the Administrative Claim that the Government failed to apply the proceeds of their mortgage to their outstanding tax liability ("Administrative Claim 4"):

> Of the $1,000,000 in taxes that are owed there has been a $100,000 levy on the Taylors' bank account, a $93,000 tax refund from the 2021 tax filing that has been seized, and a $575,000 payment from the mortgage of the Taylor home which leaves less than $200,000 in tax liability, once some other refunds and interest on the $575,000 is considered.

(Admin. Claim, ECF No. 12-2, PageID.565.)

In Administrative Claim 4, the Taylors did not identify any provision of the Internal Revenue Code or its implementing regulations that the Government allegedly violated.   Instead, the Taylors merely identified the amounts that the Government had received/obtained from them and explained how much money the Taylors believed they would have owed if the proceeds from their mortgage had

17

been accounted for in the way the Taylors proposed.  As such, Administrative Claim

4 fails to state a viable claim for a violation of any tax law.

**5**

Fifth, the Taylors asserted in the Administrative Claim that the Government

refused to process the amended tax return that they submitted for the 2015 tax year

("Administrative Claim 5").   The Taylors contended that that refusal violated

Section 6304(b) of the Internal Revenue Code, 26 U.S.C. § 6304(b):

> **Violation of IRC 6304(b)**: There is an amended return for
> the 2015 tax year that would result in a $200,000
> adjustment to the 2015 liability. This would make their tax
> liability zero for the years in issue, 2009, 2010, 2013, 2015
> and 2017. The Service refuses to process that 2015
> amended return. While the IRS is not obligated to process
> the amended return under the Internal Revenue Code,
> along with the IRS's other actions, the fact the IRS
> considers amended returns for millions of Americans yet
> is being denied to the Taylors is abusive, harassing, and
> retaliatory.

(Admin. Claim, ECF No. 12-2, PageID.565.)

The Taylors have not plausibly alleged that the Government violated Section

6304(b) when it declined to process the Taylors' amended return.  Section 6304(b)

prohibits "harass[ing]" and "abus[ive]" conduct in the collection of taxes, and the

Taylors have not plausibly alleged that the failure to process their amended return is

the kind of conduct Section 6304(b) prohibits.  That section of the Internal Revenue

Code provides:

18

**(b) Prohibition of harassment and abuse.** -- The Secretary may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any unpaid tax. Without limiting the general application of the foregoing, the following conduct is a violation of this subsection:

> **(1)** The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

> **(2)** The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

> **(3)** Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

> **(4)** Except as provided under rules similar to the rules in section 804 of the Fair Debt Collection Practices Act (15 U.S.C. 1692b), the placement of telephone calls without meaningful disclosure of the caller's identity.

26 U.S.C. § 6304(b)(1)–(4).  The Taylors have not cited any authority to support their assertion that the failure to process their amended return amounts to the kind of "harass[ing]" or "abus[ive]" conduct that Section 6304(b) is meant to prohibit. Indeed, while the examples identified in subsections (1)–(4) of Section 6304(b) are not all inclusive, the Taylors have not sufficiently explained how the failure to process an amended return is akin to a Government agent "repeatedly" calling a

19

taxpayer, using profane or obscene language, or threatening a taxpayer with violence if they do not pay their taxes.

For these reasons, Administrative Claim 5 fails as a matter of law.

**6**

Finally, the Taylors alleged in the Administrative Claim that the Government violated Section 6304(b) when it "refused to communicate" with them regarding their tax liability ("Administrative Claim 6"):

> **Violation of IRC 6304(b)**: Despite accounting for the entire $1,000,000 with no negotiating or compromise, the Service refuses to communicate with the Taylors. Again, the tax liability has been fully accounted for, yet the Taylors live in fear that the Service will continue to work to destroy their health, business, and future.

(*Id.*)  The Government's alleged failure to communicate with the Taylors, while no doubt frustrating to them, does not appear to be the kind of "harass[ing]" or "abus[ive]" conduct that Section 6304(b) prohibits. *See*, *e.g.*, *Behr v. United States*, No. 09-502, 2010 WL 1131383, at * 15 (D. Minn. Feb. 8, 2020) (holding allegation that "the IRS has not responded to many of [plaintiff's] letters over the years" did "not state a cognizable violation of Section 6304") *report and recommendation* adopted, No. 09-502, 2010 WL 1131285 (D. Minn. Mar. 19, 2020).  Nor have the Taylors cited any authority for the proposition that such a failure to communicate violates Section 6304(b).  Administrative Claim 6 therefore fails as a matter of law.

## C

The Court has addressed above all of the claims that the Taylors properly exhausted.  To the extent that the Amended Complaint asserts any claims beyond those addressed above, those additional claims would fail as a matter of law because they are unexhausted.  Therefore, any claims in the Amended Complaint beyond those analyzed on the merits above are dismissed as unexhausted.

## IV

For all of the reasons explained above, the Government's motion to dismiss (ECF No. 12) is **GRANTED**, and the Taylors' Amended Complaint (ECF No. 11) is **DISMISSED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 24, 2025


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 24, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126

21